with 251062 United States v. Kerr. I'm assuming you all have already done some sound checks for Judge Wesley. Can you confirm you hear me? Yes, I can. Can you hear me? Oh, yeah. It's great. Good morning. Nice to see you. Good morning. Nice to see you. And actually, let's just take one second, let people, there's a little bit of motion in the back. I just Thank you, Your Honor. All right, the floor is yours. Thank you, Your Honor. Good morning. May it please the court. My name is Susan Walsh and I'm from Vladeck, Raskin and Clark on behalf of the appellant, Mr. Kamal Kerr. Your Honor, this case involves a sentencing hearing for the violation of supervised release that occurred smack in the middle of the oral argument before the Supreme Court in Asteris and the decision in Asteris two months later. And of course, Asteris limited the scope of what the court should consider in terms of the factors in sentencing an individual for a violation of supervised release. Specifically, the Asteris court said the retributive factors under 3553A2A were not appropriately considered when sentencing someone for such a violation. The record in this case, despite it having been brought to the district court's attention, indicates that in fact that is what the court did below in Mr. Kerr's sentencing and revocation. First, the court explicitly and twice referenced two of the retributive factors under A2A, just punishment and respect for the law. Those two factors are not appropriately considered any longer under the Asteris decision. And the court's explicitly having invoked them at the time indicates that it was in violation of that. Why wouldn't respect for the law be an aspect of a breach of trust? Because the court can consider, should consider, the breach of trust in deciding how to penalize a breach of the... Well, Your Honor, it could be considered a part of the breach of the trust. And if Judge Gardefee had in fact thought that to be the case, he might have said it out loud. But frankly, that specific factor is one of the enumerated retributive factors that the Supreme Court of the United States says cannot be considered expressly and explicitly. So because of that, because of the nature of a revocation sentencing, because it is forward-looking, because it is not backward-looking in terms of punishment, that is not an appropriate consideration according to the majority opinion. They were in complete agreement, Your Honor, with respect to the offense. The court in Asteris drew a distinction between applying the sort of retributive considerations vis-a-vis the underlying offense and applying those considerations in the context of looking at the violation conduct. And it specifically said we're not addressing that latter category. Do you agree that Ramos remains good law as a result of that in our circuit, that we're bound by our discussion in that case that allowed us to consider the breach of trust, which might also encompass consideration of the leniency of the I would urge the court to reach that issue, although I don't believe that you have to reach the issue as to whether or not the violation conduct should be considered under the retributive factors. But I don't think you need to reach that because I think it's expressed, and at worst or at least or at best, it's ambiguous on this record as to whether or not the district court judge was considering the violation conduct or the seriousness of the underlying crime. Now, twice he references it extensively, the leniency of the underlying crime. So as a defense position, I submit that that is not what he was referencing. He was not referencing the seriousness of the violation. He was referencing the 10-year mandatory minimum from which the client was not originally sentenced, but in fact got a 5-year break down to the 5-year mandatory minimum, and then again even lower to 45 months. So the fact that the district court twice extensively mentions the leniency of the underlying offense I think speaks volumes to what was in the court's mind at the time. Well, no, you mean the leniency of the underlying sentence. Correct. Right. And the severity of the underlying offense. And those two, of course, are defined with respect to each other. We specifically in Ramos endorsed the notion that the lenience of the underlying sentence was part of the consideration of the breach of trust, right? If you got a big break out of the blocks, it's a bigger offense to the deal that you got that you then go out and re-offend, right? That's, I think, the concept. Why isn't that still binding law on us? Well, I think Ramos dealt with the seriousness of the violation may be considered because of the reference to the nature and circumstances of the offense, which is permissible in a forward-looking deterrence rehabilitation aspect, which is still permissible under Asteris, is still permissible under the pre-Asteris Ramos case. But the seriousness of the underlying offense, most respectfully, Your Honor, is no longer permissible. When you say the underlying offense, you mean the offense for which the defendant was sentenced, or do you mean the offense that triggered the violation of supervised release? I mean the underlying crime for which the defendant was originally sentenced. Have we ever said that a court cannot consider the seriousness or the need for retribution even with respect to the offense that underlies the violation of supervised release? Have we ever said the court cannot consider it? No, on the contrary. In Williams, this court said that it could, and I think after Asteris, Williams has been abrogated. That's backward-looking, isn't it? Yes, and it's no longer good law post-Asteris. It's no longer the law? Not as to the underlying offense that is the crime that was the sentencing. Okay. Not the violation. I'm talking about the sentencing. The court can look at the violation, the conduct that caused the violation of supervised release, and can impose a sentence that involves retribution for that? I don't think that that is the case, Your Honor, and I would urge the court to reject that. I don't think that the court... That's why I'm asking. Yes, the court should reject that for a number of reasons. First, because of the reasoning in the two concurrences by Judge Sotomayor and Judge Jackson. Second, because of the prefatory language in the Guidelines, Chapter 7, that says this supervised release is a specific type of hearing. Surely, there's a difference in terms of the degree of the breach of trust if the supervised release is violated by an act of arson, as in this case, or if it involved jaywalking. If the breach of trust is evaluated, then isn't it more of a breach of trust to a violated supervised release by committing an act of arson? Well, I think any criminal conviction... Then am I doing something trivial? Of course. I think that a criminal conviction is a serious breach of the court's trust. We acknowledge that below, and I acknowledge that before the court today. A new conviction is. But it doesn't change the nature of what supervised release is. And frankly, Your Honor, that can be considered still postesterous under the nature and circumstances of the offense, which is the forward-looking aspect. And because, at best, the record below is unclear as to whether or not that is, in fact, what the district court was referencing or considering, notwithstanding the fact that the court said that he would sentence the defendant, Mr. Kerr, the appellant, with respect to the ordinary or general factors that a court considers during sentencing. And then enumerated just punishment and respect for the law. Now, those are 3553A factors that at a sentencing, a regular sentencing, the court can consider. But postesterous can no longer on a supervised release revocation sentencing. And because the court expressly enumerated those prohibited two retributive factors, at best, this case needs to be remanded for clarification. I submit that the court was talking about the underlying offense. It also embraced, as did the government below. Ms. Walsh? Yes, Your Honor. I'm sorry. I apologize. I realize that it's difficult when one of us is away, but you keep saying that there's this confusion. But at Appendix 25, let me read to you what Judge Gargi said. I have considered the factors that generally are considered in sentencing, including the nature and circumstances of the violation, Mr. Kerr's personal history and characteristics, the need for a sentence imposed to reflect the seriousness of the violation, the need to promote respect for the law, to provide just punishment, to afford adequate deterrence to criminal conduct. How is that unclear that he was talking about something other than the conduct underlying the violation? Because the court goes on at the next page at A26, Your Honor, to reflect upon the leniency of the sentence, which is precisely what the Asteris Court reversed on in the Supreme Court, the leniency of the initial sentence. And because the court said that it would consider, forgive me, at page A25, the Appendix 25, I have considered the factors that generally are considered at sentencing. Those two factors under 3553A that this court just read, even though the words violation is inserted there, are not permitted when the court is sentencing for a violation of supervised release. So at best here, Your Honor, there is ambiguity, at best, and which means that it needs to be remanded back for clarification. Excuse me, Your Honor, I'm sorry to talk over you. It's difficult with the door. No offense taken, counsel. You've done a nice job with your argument. But it's dependent upon us finding an ambiguity with regard to what happened or what Judge Garthie meant, right? No, I think it's quite clear. But I think at worst, I think the record is clear. I know it's clear in your mind, but it depends, it requires us to agree with you that there's an ambiguity. Yes, it does require that to be remanded and that the error was not harmless, Your Honor. I understand what you want us to do. I'll just ask you a simple question. Thank you. Thank you so much, Your Honor. Thank you. Thank you so much. Is it Zabel? Zabel, yes. Good morning, Your Honors, and may it please the Court. Joe Zabel for the United States. I represent the government on this appeal, as I did in the district court below. This court has long held that a district court imposing a revocation sentence may and actually must consider and sanction the breach of trust that the violation represents. Asteris did not disturb that. That remains the court's precedent. Its holding was actually quite narrow and targeted. Asteris said that a court may not rely on 3553A2A in order to punish the underlying offense of conviction in the revocation proceeding, not the violation. It explicitly left that undisturbed, and that is the full extent of Asteris, despite what an appellant would contend. When you start focusing on the lenience of the initial sentence, aren't you essentially saying, well, now that we have another look at this, you didn't get punished enough for the underlying offense, not the violation, the underlying offense? And once you start talking about the lenience, doesn't that essentially bring that back into the conversation? Aren't you essentially doing retribution for the underlying offense? Respectfully, I would disagree, Your Honor. I think that what happened here, and it also is precisely what happened in Lopez, which I'll talk about in a minute, is that when you are fashioning a sentence that reflects a breach of trust, the baseline level is the trust extended to the defendant. That's what happened in Lopez, which is the same judge, materially similar circumstances with a lenient original sentence. Here, Judge Gardefee extended a lenient sentence, which is predicated in part on a level of trust extended to Mr. Kerr that you won't go out and violate. That's the baseline level. That's an input in the breach of trust analysis. Then, when the breach occurs, as it did here, which is an arson of an occupied building, that is a relevant factor in the breach of trust. It's a measure of the trust extended, and then the magnitude of the breach is both a consideration of the original trust extended and the seriousness of the violation. Here, the seriousness of the violation was quite severe. It wasn't missing in probation. Can I poke a little bit at the notion that the seriousness of the violation is a fair measure of the severity of the breach of trust? Why wouldn't it be the case that the extent to which conduct breaches the trust is more a function of the intentionality with which someone sets aside the trust placed in them? Why isn't it a bigger breach of trust for somebody who's been assigned, given a lenient sentence, put on supervised release, assigned to attend some sort of treatment program, and then says, ha, I'm not going to go to that treatment program at all. I'm going to go play basketball in the park. Why isn't that a bigger breach of trust than somebody who commits a crime of passion that wasn't in any way conceptualized by that person as a, I'm going to show that court. I'm going to violate the supervised release conditions. It was conduct that violated the supervised release conditions, but that wasn't plausibly within the sort of scope of why it was done or how it was done. Respectfully, Your Honor, I think both are important considerations. I think that breach of trust has a normative aspect to it. It is a court saying, here's the trust I've extended you, and you can breach that in a number of ways. And I think one way, as Your Honor pointed to, is sort of a direct contravention of a court-appointed condition. That could be missing an appointment to go, I think you said play basketball. That would certainly be one. But I think you cannot fully measure the magnitude of the breach without considering the seriousness of the violation. Because I think for any sort of reasonable person, it is of greater moral importance to commit an orson than it is to skip out on a probation appointment. I think the severity necessarily is infused, or I should say the reverse. The breach of trust is necessarily infused with severity because it's accommodating this whole sort of moral framework. How do we then, I mean, I think the danger, the thing we would want to avoid is double counting, right? We know that this person is, if the violation conduct is itself criminal, then there's the opportunity for the law to come in and sanction somebody criminally for that conduct. The revocation proceeding isn't the place for that. To the extent we start weighing the seriousness of the conduct, aren't we risking sort of double counting that? Your Honor, respectfully, I don't think so. I think judges, well, I think two things. First, you could certainly imagine that there is a violation that is not, that could be a severe breach of the trust and sort of very improper conduct that can be a criminal violation. So then there's no risk of double counting. Here, when there is a violation that is also coterminous with criminal conduct, I think judges can keep in mind two things. They can keep in mind, as Judge Gardefee did here, he reflected on the sentence that was imposed for the arson here, which was in state court. Keep that in mind with the separate, and case law says, the separate sort of the magnitude of the breach of trust to the original district court that did the sentencing. Because as Your Honor knows, supervised release is a part of sentencing. So I think it is, there is certainly overlapping considerations when you have an offense that's a criminal offense that also happens to be a violation. But they are, the motivating factors are necessarily different. The motivating factor of a VOSR sentence is primarily, although not exclusively, the breach of trust, which encompasses some of those factors that might also motivate the state sentence. But judges have that in mind. I think we afford district judges the discretion to be able to hold both those things in mind at once. Well, there's no reason to believe that Judge Gardefee was taking into consideration the state sentence and finding it inadequate such that he was going to sentence the defendant here with regard to the fact that the state sentence wasn't punitive enough. Is there? No. We don't see any argument from Mr. Kerr to that effect. He's very ably represented by Ms. Walsh. There's no argument to that effect. Is there? No, I don't think that, so Judge Gardee does reference the fact that he understands he's served time for the state offense. I believe some of it was in Rikers and that that is hard time. Kind of explicitly to say I'm not punishing you more for that. You've been punished. The violation conduct is this separate construct under which I am going to fashion a revocation sentence. The judge fashioned a revocation sentence that is the same as recommended by the Probation Department. To what extent did the Probation Department's report and recommendation conform to Asterix? So, Your Honor, the probation recommendation, which was a fairly short portion that was outlined in the government submission, recited the factors. It did not in any way say these are the factors that you can consider to punish the underlying offense. It recited factors that Asterix, after the fact, said should not be considered. Respectfully, Your Honor, Asterix has never said that you can't consider those factors, the retributive factors, with regard to the violation. It was a narrow-holding that said you cannot consider those factors with respect to the underlying offense. There's no indication that Judge Gardee did that. There's no indication that the government was suggesting he should do that. There's no indication that probation said he should do that. In fact, Judge Gardee kind of bent over backwards to say multiple times at the beginning, after Ms. Walsh ably objected, that this is the construct overlay in this entire sentencing. He's breach of trust. He did it right after the recitation, and then he did it when he was announcing the sentence. And your argument is that Ramos said that the judge can consider the conduct that constituted the violation to a limited degree. Absolutely, Your Honor. That is in Ramos. That's in Williams. That was recently reaffirmed by this court in Lopez, which is a panel in January of this year, which dealt with a sentence imposed by Judge Gardee using the same language where he was also—he also invoked that he was—he had initially treated the defendant with some leniency, and then the defendant went out and violated. He used the exact same language, citing—and this court cited Ramos in that— Consideration to a limited degree is what responds to the concern Judge Robinson raised about double count. That's correct, Your Honor. I think the important thing about a violation is that it is—the breach of trust and the other factors are not—they encompass more things than just the seriousness of the violation. As Judge Robinson ably pointed out, it is also about sort of the trust extended, and, you know, there could be an example where the underlying violation is not necessarily—doesn't hold as much moral valence, like if you, for example, skipped out on probation. But, you know, if it was an explicit requirement, that could still be a serious—that could still be a very important, like, breach of trust, despite the fact that the underlying conduct is not arson of an occupied home. So I think judges are juggling a lot of things, and that's precisely what the framers of the guidelines envisioned when they fashioned this concept of the breach of trust. Thank you. If there are no more questions, Your Honor, the government will rest on its briefs. Thank you. Thank you. Appreciate it. Attorney Walsh. Judge Gardefee was applying the law under Williams, which was the law of the land at the time. The fact that he referenced his prior sentencing twice during this revocation hearing is, at best, Your Honor, ambiguous, and is precisely what the Supreme Court said should happen. This is a narrow case that happened between oral argument and decision in Asteris. It was a gray area, and Judge Gardeefee—if Judge Gardeefee was applying it only to the violation, or if there was no ambiguity in his mind, what is the harm in remanding it to Judge Gardeefee to clarify? That is precisely what the majority opinion in Asteris said should happen when there is an objection. Now, the defense is a little hamstrung in the Lopez case's precedent because, first of all, it's not precedent according to the local rules. Second of all, the transcripts and the briefs are under seal, so the government may have access to that, but arguing that is difficult from my situation. But what is clear is that Lopez was a plain error case. There was no objection by defense counsel below in that case that preserved the error. And in this case, there was. And so this is a harmless error analysis before this court under the Kerr decision. And, Your Honor, most respectfully, there is ambiguity here, even if, in my mind, it's not ambiguous. If there are two possibilities, then I submit to the court that, most frankly, the best outcome is simply to remand it so that Judge Gardeefee can clarify. If the court doesn't want to reach the retributive factors with respect to the violation. And, finally, we're talking about statutory law here. Breach of trust is not in this statute. But A2A is in the 3553 factors that Congress enumerated and which Congress explicitly left out of the revocation statute. They didn't throw in breach of trust to that statute. Right. But now you're asking us to overrule our, I mean, this question of whether breach of trust is a proper consideration. That would require us to overrule this panel, overrule the precedent of this court. I think it would be inappropriate to take the retributive factors and recharacterize them as something that's considered under the rubric of breach of trust, Your Honor. That's what I'm saying. I think that it's quite explicit, the factors in the statute, where they apply and where they do not apply. So I don't think it's appropriate to recharacterize them so that we can say that's what the court meant. Particularly when we have a genuine, honest, able district court who's capable of saying what he meant. Yeah. And exactly what the remedy that Asteris suggests. Thank you very much. I appreciate it. I think we have your arguments. Appreciate it, both of you. We'll take this under advisement. Next up, we have 242826, Cho versus Brown University. Thank you. Good morning, Your Honors. Joshua P. Davis of Bergamonte for plaintiff's appellants. Ms. Kirk, who is in the courtroom today. And Mr. Cho. And this case involves the Ivy League schools' agreement not to offer athletic scholarships. Under NCAA versus Alston, the horizontal agreement on price, that horizontal agreement on price, is unlawful if plaintiffs satisfy the rule of reason analysis. And to satisfy that rule of reason analysis, plaintiffs must simply offer non-conclusory allegations that plausibly establish that the Ivies entered into an agreement not to offer athletic scholarships and that that agreement had anti-competitive effects, that it in fact deprived Ivy students of athletic scholarships. And they have made those allegations plausibly. Plaintiffs, please. I mean, so you're jumping. I guess the premise of your argument so far is you don't need to define a market for the purpose of assessing whether there are anti-competitive effects. And I'd like to hear a little bit about how one can assess anti-competitive effects without understanding the relevant market. Right. So I'm trying to set up the larger framework. I do think that that is true, but I don't think the court needs to reach that issue today because the direct allegations that plaintiffs have made of an anti-competitive effect do define a relevant market. The point of the inquiry into a relevant market and market power, the definition of a market for these purposes, is what group of market actors, if they were to enter an agreement, would be able to have an anti-competitive effect. That is the definition of a market for these purposes, Regeneron, American Express. But an anti-competitive effect, that doesn't exist. Anytime a price goes up, that's not an anti-competitive effect, right? If I'm a seller and I say I'm going to raise my price, the price has gone up, but it's not anti-competitive because somebody can go buy from a different seller. They could. So the question is, right, but so a couple of things. The main one is that as this court held in Regeneron and other courts have held consistently, including American Express, direct allegations can suffice to establish market power and thereby a relevant market. And so if you had an individual actor raising prices, the fundamentals of antitrust economics are either they did it because that's what the market would support or it would not be sustainable. And that's why we use, to be a little technical in this setting, the hypothetical monopsonist test or for sellers the hypothetical monopolist test. What you'd ask is precisely is this actor alone or with others able to change prices by a small but significant non-transitory, by a small but insignificant amount for non-transitory period and succeed and be able to do that under those market conditions where market pressure would otherwise render that impossible. So how do you apply that? And I think maybe this question reveals my frustration with something nobody's really challenged, which is this definition of the elite student athletes, right? So when you have a world where these schools have tens of thousands more applicants than they accept, how do you even run this hypothetical SSNIP test, right? I mean, you're not going to be able to measure the effect on the demand when the demand is going to backfill anybody who switches to a cheaper product, so to speak, and I realize. Right. So the way you run it, the most straightforward way to run a test is you ask, all right, could the Ivys together pay less for student athletic services than they could individually? That's the test. And there isn't actually very meaningful. Is that really the test? That is the test because what we say is, look, an Ivy can charge whatever it wants if it can do it on its own. But if you need horizontal price fixing in order to achieve a price effect that you otherwise could not, that is the very definition of an anti-competitive effect. Now, there may be offset pro-competitive effects.  Doesn't it presume that folks won't go elsewhere because they think Stanford is just as good as Cornell? It doesn't presume it. It proves the opposite is true. You self-acknowledge it because all of a sudden when your argument gets into a bit of trouble,